12110454. Counsel, please. Thank you, Justice. May it please the Court, my name is David Trump. I currently represent Richard Messerly in this matter, and I guess we have a preliminary question. There is a cross-appeal on this. Our appeal was first, so Mr. Lurie and I have flipped the coin and said I should go first. We wanted to make sure it was okay with the panel. Thank you. We essentially have three arguments currently before the District Public Court. The first one involves an evidentiary ruling that occurred at the time of trial, wherein the Commission subsequently struck down the introduction of vocational rehabilitation bills on a foundational ground, where in fact at trial there had been no objection. So since this is an evidentiary ruling, the standards that we're asking this Court to utilize would be whether the ruling was an abuse of discretion. So during the trial, vocational rehabilitation bills of Frank Trayors were entered into evidence with his testimony. At the time of the introduction, the opposing counsel was even asked by Arbitrator Tobin, are there any objections? To which she voiced none. So Judge Tobin introduced those into evidence and subsequently awarded those bills as part of the final award. Now on appeal to the Commission, and for the first time, the employer objected to those bills on a foundational level. The problem is that at the time of trial, they had voiced no objection, so it's our belief that that objection would have been waived. So the Commission disagreed with me though. They struck these bills, these vocational rehabilitation bills, concluding that they lacked foundation. Interestingly, the Commission types to the case of Land and Lakes Company versus Industrial Commission. Did the Commission say they were not admissible? Or did the Commission simply not award the bills? They said they lacked foundation. They didn't go into reasonableness. They did in their discussion, but they said that they had completely excluded them based on foundation. And the problem that comes in with that is, if there's no objection on the basis of foundation at the time of trial, you can't then, and I agree, reasonableness, that's certainly an issue. If they're admissible, that doesn't mean they get paid. Correct. Correct. And in fact, the Land and Lakes Company versus Industrial Commission, that very case that they typed to, had a bill that was being objected to by opposing counsel at the time of trial. That's the whole point. And in fact, one of the notes within that case says, when a proper objection is raised, a proponent must lay an adequate foundation for the admission of documentary evidence. In this case, there was no proper objection. What he's alluding to, I think, is two separate issues. Let's say that it comes into evidence there's no objection. Does that mean that once the bills are admitted into evidence, that the prior effect still has no discretion to decide what to do with those bills? It seems to be what you're saying, correct? Yeah. But then when it came into evidence, so how could they not have gotten paid? There's another part of this analysis, isn't there? Agreed, yes. And that's the part that never got, that was never really reached by the Browns. So in this case, it wasn't as though they got into any discussions of opposing vocational counselors, said that the testing was, or that the vocational services were unreasonable. Or there was no discussion that the services provided were not necessary. They weren't getting into those discussions. They simply kicked out the entire bill, saying it lacked foundation. Let's assume that they did that. What about the argument that we can affirm on any basis in the record? What about if we look at it and find since there was no evidence of reasonableness, the commission was correct ultimately, even though the grounds on which they ruled was erroneous. What about that argument? Well, it's certainly within the court's discretion. I can't disagree with that. But what I would say is, at the time, whenever there was, or when there should have been an objection made, had I known that there was going to be an objection based on reasonableness, based upon foundation, You would have tried to cure it. I would have tried to cure it. I would have had Mr. Traers testify further regarding the reasonableness of the bills, the necessity of the bills, to lay the foundation for the remaining objections. That still doesn't go to whether it would be awarded. Do you understand what I'm saying? Yes. In other words, yeah, you could have cured the foundational requirements, but let's assume they should have been admitted because there was no objection. Okay. That doesn't mean that the commission would have or should have ordered that that bill be paid. Correct. Because the commission still found that the bill lacked specificity as to what Traers did, when he did it, whether it actually had anything to do with consultation with the attorney as opposed to rehabilitation services. And if you look at the bill, it doesn't have much of a bunch of abbreviations, that sort of thing, right? Exactly. And that's exactly where my remedy would be to remand it to the commission and allow me the chance to rectify it. Why didn't you do it correctly? I'm sorry? Why didn't you do it correctly to begin with? Because there was no objection. If there was no objection based on the reasonableness of the bill, no objection questioning the reason that they were introduced, why would I have taken the time to correct that which was not being objected to? So you're asking to fall under the general sandbagging rule, is that it? I'm not familiar with the general sandbagging rule. Okay. But what we're asking for is if it's going to be further construed by the commission, allow us a chance to at least remedy the situation, allow us to rectify it by having Mr. Traers address those questions that would be made as part of the general objection, because in our world, we didn't do anything further to correct because we weren't aware of it. We didn't have an objection. He was asked some questions, and he said he really didn't know much about the billing, he wasn't involved in the billing, other people did the billing, and he couldn't really answer very many questions about the bill. And I agree. At the time he was on the stand. Yes. Maybe later, after some study, he might be able to answer those questions. But he was asked some of those questions at the arbitration hearing. And had there been an objection, I probably could have gone to, or redirect, asked him further inquiry to try and delineate that which he did know, because that goes to what portions of the bills would be considered reasonable, that portion of it which would not be considered reasonable. Because I think it's all agreed upon that the maintenance, or that the vocational bills at least to some extent were reasonable, at least to some extent should have been paid. Well, to some extent, what's that mean? To some extent would mean that as part of my job in redirecting him, I would have asked him to identify which each of the entries were for, so that we could at least identify those which were part of his vocational rehabilitation services that he could have identified, and could have said, these hours were part of my services, these were part of my vocational efforts in this. And had I known of this being an objection at the time of trial, I certainly would have done that. I certainly would have taken the time to redirect and make certain that he could identify at least those portions of the bills which are part of the... However, this is, you know, if nothing else, this is a lesson learned. I mean, you get to proceed on the basis you've got to cover all of the vocational elements, even if your opponent may be asleep at the script. And I agree, Justice Hudson. The problem that I have with that is I go back to my old law school days, my old evidence days, where my evidence professor would say, if you don't object to it at the time of trial, don't be upset whenever your objections are waived and it's allowed into evidence. And I guess it was my fault. You're right. Whenever someone doesn't object to something at the time of trial, I assume that the evidentiary foundational elements of it are waived. And they were. And yet, as we were saying, there's a difference between getting it into evidence and the efficacy of the evidence. Right. They're two different inputs. And I do understand that. So, as it relates to that, I would ask then that this be reversed and remanded back to the commission so that I can have that further inquiry regarding those foundational elements so that I can have him identify the efficacy of the bills as well as finish up some of those foundational elements that were not objected to at the time of trial. What about the commission's denial of penalties and attorneys? That's one of the things that we also believe requires modification. We believe that the manifest way to the evidence does not support the reversal of the commission in reversing those and denying those penalties. The history of this helps us in identifying the penalties. This is actually the second trial on the same issue. The first trial on this matter took place in September of 2006. At the time of that trial, it wasn't disputed by respondents that as a result of the heat stroke, Richard had developed a heat intolerance that was possibly related to his work injury. Undisputed. Undisputed that he had developed permanent work restrictions that removed him from returning to his former line of work. Undisputed that Thomas Codings couldn't accommodate his new restrictions. And in fact, before this first trial, the employer had actually provided vocational rehabilitation services and provided maintenance benefits. After the first trial, further maintenance, further voc rehab services were ordered. So this is something that now became the law of the case because of the fact that it was never appealed. So now as we follow up and go to trial two, after the first award was issued that wasn't appealed, the employer, instead of providing the vocational services that had been awarded in this part of trial one, they refused. Instead, they set up an evaluation with their own vocational specialist. They paid maintenance benefits for a duration, but in September of 2007, without any justification, without any identification as to why they stopped, they just unilaterally shut off maintenance benefits. Those are the reasons why we are looking at the penalties issue as being an appropriate remedy here. Can I ask you a question? Certainly. Could you tell me which cases you cited in support of the argument number three, that the commission erred in removing the penalties? Your Honor, we actually cite to the provisions themselves as far as 19K and 19L and their purposes. And the purposes behind them is if there is unreasonable and vexatious conduct by the employer, then that would be the basis for establishing the 19K and 19L. You cited no cases in support of your law of the case argument? You are absolutely correct, Your Honor, and I do apologize for that. I mean, this panel would be well within its right to declare the issue forfeited. There is no forfeiting cited here. I mean, it's a general statement as to the penalty section. And, Your Honor, if you, in looking at the case law involving 19Ks and 19Ls, most of them are going to be very fact-specific without so much general, without identifying the purpose behind, different than what the law already says behind 19K and 19L. I defy you to find a case on 19K or 19L where this panel ever decided and didn't cite any cases. Your Honor, if you would like, I would be willing to issue a, provide a supplemental brief. Trust me, we don't need any more trees chopped down. And I do apologize for that. But for my money, this has got to stop. The business of writing briefs and not citing authorities has got to stop. And maybe the only way to do it is to hold a few of these arguments forfeited. Now, with regards to my third argument, which actually is in response to the employer's argument on this, we believe that the Commission's decision awarding further vocational rehabilitation benefits and awarding ongoing maintenance benefits was not against the manifest weight. As I indicated before, we already have had the two cases. The first case where they could voluntarily provide vocational services and maintenance. This is the first award where they were awarded, where my client was awarded vocational services and maintenance. And now here at the second trial, the court awarded further vocational and maintenance because my client had not yet found reemployment. And so the question is whether the Commission had evidence upon which to base their conclusions. And in this situation, the court, in coming to its conclusions, was able to base it upon the law of the case from Award 1, the restrictions from Dr. Villarich, who had evaluated him at the time of Trial 1 and the time of Trial 2 and had said that there was no change in his physical condition, even the respondent's own independent medical examiner, who had identified work restrictions that removed him from his previous line of work. And so we believe that the manifest weight of the evidence supports the Commission's decision in concluding that there was appropriate evidence to support an award for maintenance and vocational services. And in fact, if the court had stopped there, we may not even be here today, but the court went on to add another sentence which has made things a little bit more confusing. In their award, the Commission said, quote, Petitioner should explore and pursue further possible reemployment in an indoor union painter in his future vocational efforts. They didn't say as a full-time union painter that they agreed he can't go back doing that, but it has become confusing because if the law of the case before was he couldn't return to his previous line of work and he couldn't return to work as a union painter, it's confusing as to now they're saying he should consider indoor union painting in his future vocational efforts. Regardless, the remainder of the opinion is valid. The court had said he's entitled to vocational services and maintenance. They just had suggested adding this potential indoor union painting in his future vocational efforts. And so I believe that as a result, the manifest weight of the evidence still supports the Commission's decision on all of these issues, and especially with the awarding of the maintenance and vocational rehabilitation services. So a question on penalties and fees. You seem to be arguing that the Commission erred when they denied the claimant's request for penalties and fees because there was no evidence to support the denial. What about the opinions of Minnick in the videotaped surveillance that shows he's playing golf and now you do what? Agreed. But if the vocational conclusions of Daniel Minnick were the basis for them removing the Mr. Minnick's conclusions, of which case no vocational services would be needed, that's not what they concluded. They said just the opposite. Vocational conclusions were needed. It's a different question, frankly. I mean, the question on penalties. Does the employer have a reasonable basis for withholding some payment benefits? That's a different question than if the employer is entitled to it at all. Is there a reasonable basis? And I agree. But in Mr. Minnick's case, he didn't say that Richard didn't need vocational services. He didn't say that he was capable of returning to work full duty going back to what he was doing before. He was the one also saying he needs services. There is work out there for him in the open labor market, but he simply needs vocational services, which would also include maintenance benefits. Thank you. Your time is up, counsel. We'll take that one. We'll go to the counsel, please. Okay. Please, the court. Counsel, my name is Jay Lori. I'm here on behalf of the employer. We did file a motion to strike in this matter that I understand the court will take under advisement. Do you want me to address that a little briefly? But otherwise, I'd like to get straight to the argument. I'll start with the vocational bill. I believe Justice Stewart got it right, that even if the bills come in, there's no reason to have the bills paid by the employer. I think the commission addressed that issue. It states that there are a number of things in those bills that Mr. Trier should not explain and were not related to vocational services. What about his argument in the sense of an overall sense of fairness? He's saying, well, I understand that now, but since they came in without objection,  it's still a reasonableness argument. He still has to address that, and I believe on cross-examination, Mr. Trier's question in detail about the bills line by line on several of these, he could have redirected Mr. Trier's and had him explain those in a better fashion. I think he had the opportunity to do that, and he missed it. I think the employer in this matter pointed out the inconsistencies in the bill and that the commission saw that, and that's why they struck the bill from any reasonableness for To the idea of penalties, the second issue he got, I believe that comes down to the credibility of the petitioner. I believe the surveillance videos show the petitioner doing activities well outside what he told the doctors and vocational experts, even testified to, that he could do. And I believe the commission picked up on that and found it reasonable for us to cut off benefits and not award penalties. Also, in connection with Minnick's testimony, he supported that? Well, I believe, yes, Minnick felt that he was employable. I believe it was pointed out on cross-examination, Mr. Trier's, that the petitioner is able to go to job fairs by himself, go to interviews by himself, he can email employers, he can look at the blind listing. I feel that the employer in this matter supported its position with all of that. Finally, to address the issue of re-employment, the re-employment of the union painter. Again, I think a lot of this comes down to the petitioner is not credible in this matter, and the commission picked up on that. He told the doctors he can't do things in certain temperatures. Dr. Blarich testified that he would be surprised, basically, if he was golfing, and then we got him golfing on a number of days. He doesn't seem to be having problems when he's golfing. How warm was it when he was golfing? Temperatures ranged up to 96 degrees according to the investigator, and if you look at the weather records we entered, they're up to 93 degrees according to the weather record. So he was well above 80 degrees. There's no medical records supporting him getting nauseous or sick or any permanent damage due to this golfing outing. And in fact, the last one, if you look at it, even if you think, well, he's not golfing, and then the next day he's recuperating, he golfed two days in a row, four hours each day, both days' temperatures in the 80s and 90s. So I think there's credibility of shot in this matter, and I think the commission picked up on that. Our big issue is that the commission states that he can go back to work as a union painter, but then still gives him vocational services. We have a problem accepting that because he doesn't need vocational services to be a union painter. He was one for years. He knows how to contact the contractors. He knows how to do that job. No loss of wages if he's doing the same job. So under National Team, we don't feel the commission was correct in awarding him vocational services and stating he can go back to his regular job. In conclusion, we would basically argue that, or ask this court, the commission was correct in not awarding the penalties, and striking the vocational bill, and saying he was employable as a union painter. But we would also argue that, based on the petitioner's own credibility issues, he should not be awarded vocational services. Any questions? My opponent has argued that there were issues of credibility surrounding my client. If you look at the commission decision, not once was the issue of credibility raised. They were saying, even after reviewing the surveillance on that, they were saying that there may have been some, how did they say, some bad faith or something along those lines. But if they had found him to be not credible after reviewing the surveillance tape, wouldn't they have said that he's capable of returning to work any activity? That's not what they said. They said, we believe that he cannot return to work as a union painter unless indoors. And as far as the surveillance, I know that you have those surveillance tapes attached to your briefs. Some of the issues that I'm going to ask that you look at is, first of all, with regards to the temperatures that they're talking about, the gentleman who gave the history of the temperatures was giving us St. Louis temperatures. He wasn't in St. Louis. He was farther north. Also, take a look at the time of day that he was playing, the trees in the background that were blowing, as arbitrator Tobin pointed out. More importantly, during one of the golf outings, he takes a towel from a cooler that had been sitting in ice, wraps it around his neck, and puts his shirt over it, the short-sleeved shirt. He continued to play golf with a frozen towel around his neck to keep his body temperature down. On the other hand, he testifies that nailing 12 nails was too much for him. Which I agree. He didn't nail 12 nails. Even with what you just said, he went golfing in 96 degrees. Then I agree. And so I think he was overly dramatic with Dr. Balarge, but I've got to say, too, if he could only nail 12 nails without being exhausted, he wouldn't have been going to Texas, Louisiana, Boston, all these places to find reemployment. We would be talking about a firm total. We're not. This gentleman says, I can work. I want to work. So was he being overly dramatic with Dr. Balarge? I agree. And I agree that doesn't help his credibility. But we're talking now about finding reemployment for him in the open labor market, given his temperature restrictions, that we know limit him especially to indoor work. That's what the Commission has awarded us. That's what I think the prior awards, the medical testimony, even Mr. Minig and Mr. Carreras, all of them agree, he's got limitations that don't allow him to return to work for his prior outdoor work. And so that's what we're talking about. And that's what I believe the manifest way to the evidence certainly shows and supports the Commission's decision. Does anyone have any questions? Thank you, counsel. The clerk will take the matter under advisory for disposition and recess until about 12 o'clock. Thank you.